**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 17, 2017**

# In the Court of Appeals of Georgia

A16A1609. WINFREY v. THE STATE.

McMILLIAN, Judge.

Jimmy Carlton Winfrey appeals from the judgment of conviction and sentence entered after he pled guilty to multiple charges of violating the Street Gang Terrorism and Prevention Act.[1] In his sole enumeration of error, Winfrey contends that the trial court improperly participated in the plea negotiations to the extent that his pleas to the charged offenses were rendered involuntary. We affirm for the reasons set forth below.

---

[1] In addition to the Street Gang Act charges, Winfrey was also indicted for multiple counts of violating the Racketeer Influenced and Corrupt Organizations Act, multiple counts of aggravated assault, two counts of criminal damage to property in the first degree, and possession of a firearm during the commission of a felony. These charges were nolle prossed as part of Winfrey's negotiated plea.

1. Before we turn to Winfrey's substantive arguments, we must first address our jurisdiction to decide this appeal. The State has filed a motion to dismiss,[2] contending that Winfrey has forfeited and waived his right to pursue this appeal because he did not first raise this issue in the trial court by filing a motion to withdraw his plea. However, our appellate courts have repeatedly and clearly rejected efforts to have direct appeals following guilty pleas dismissed on this basis, recognizing that a direct appeal is a "prescribed means to challenge the guilty plea."*Agerton v. State*, 191 Ga. App. 633, 633 (382 SE2d 417) (1989). At the same time, our appellate courts have made equally plain that under these circumstances our review is limited to only those claims that can be resolved by facts appearing in the record, including the guilty plea transcript and any other evidence properly presented to the trial court, provided such evidence is also included in the record on appeal. *Smith v. State*, 287 Ga. 391, 402-03 (3) (697 SE2d 177) (2010); see also *Mims v. State*, 299 Ga. 578, 580 (1) (787 SE2d 237) (2016) ("Even when a defendant has pleaded guilty, he still may be entitled to take an appeal of right, but only to the

_____

[2] A brief of amici curiae has been filed by the Georgia Gang Investigators Association and the Office of the District Attorney for the Brunswick Judicial Circuit, which for the most part merely reinforces the jurisdictional arguments advanced by the State.

extent the issues presented on appeal can be resolved by reference to the existing record."); *Smith v. State*, 253 Ga. 169, 169 (316 SE2d 757) (1984); *Kennedy v. State*, 319 Ga. App. 498, 498 (735 SE2d 819) (2012); *Olguin v. State*, 296 Ga. App. 209, 209 (674 SE2d 89) (2009). Thus, "[a]lthough a defendant who hopes to appeal successfully from a guilty plea is not *required* to first file a motion to withdraw the plea, the possibility of expanding the record on which the appeal will be reviewed, and doing so with assistance of appointed counsel if indigent, should create a strong incentive for defendants to do so." *Smith*, 287 Ga. at 403 n.7.[3]

Accordingly, before proceeding to the merits, our first step is to examine the record to determine if the issues Winfrey raises on appeal can be resolved by facts appearing in the record, including the transcript of his guilty plea hearing.[4] *Caine v.*

---

[3] This observation appears to obviate any concerns that allowing a direct appeal from a guilty plea somehow confers an advantage on such direct-appeal appellants over those that choose to first file a motion to withdraw and then appeal any adverse ruling to the proper appellate court.

[4] The argument advanced by the amici that we are confined in such instances to the consideration of purely legal questions is belied by numerous appellate cases, some of which are cited in this opinion. While our appellate courts routinely note that a motion to withdraw may be required for certain claims, most notably claims of ineffective assistance of plea counsel, because those claims cannot usually be decided based solely on the plea hearing transcript and instead will almost always require the development of a post-plea evidentiary record, e.g., *Green v. State*, 291 Ga. 506, 507 (2) (731 SE2d 357) (2012); *Coleman v. State*, 278 Ga. 493, 494 (2) (604 SE2d 157)

*State*, 266 Ga. 421 (467 SE2d 570) (1996); *Jones v. State*, 332 Ga. App. 506, 507 (773 SE2d 463) (2015); *Kennedy*, 319 Ga. App. at 498-99; see also *Smith*, 287 Ga. at 403-04 (unable to consider challenge to plea based on failure to inform of effect of plea on immigration status when record does not disclose appellant's citizenship status); *Jones* 332 Ga. App. at 508 (1) (a) & (b) (unable to consider claims based on earlier plea negotiations or mental competency absent an evidentiary hearing or other development of the record). Winfrey's specific enumeration and arguments on appeal are based on statements made by the trial court on the record during discussion of the status of plea negotiations between Winfrey and the State, and a transcript of the proceedings during which they were made has been made part of the record on

---

(2004); *Grantham v. State*, 267 Ga. 635, 635 (481 SE2d 219) (1997), neither the State nor the amici have cited us to any cases in which our appellate courts have refused to consider a claim of improper trial court plea participation because the appellant did not first file a motion to withdraw in the trial court. To the contrary, we have specifically considered such claims on direct appeal. Further, their reliance on cases in which we have found waiver when a motion to withdraw was in fact filed but the plea participation claim was not raised does nothing to advance that position. See *Coleman v. State*, 337 Ga. App. 732, 738 (3) (788 SE2d 826) (2016). And, as our Supreme Court has noted, a "claim that [a] plea [is] not knowingly and voluntarily entered is not subject to Georgia's customary procedural default rule, which holds that claims not raised at trial . . . are waived, because the rule does not apply to a claim that a conviction or sentence is void." *Smith v. Magnuson*, 297 Ga. 210, 212 n.3 (773 SE2d 205) (2015).

appeal.[5] Because we can resolve the issues before us based on the existing record, Winfrey's appeal is not subject to dismissal on this basis. Accordingly, the State's motion to dismiss is denied. *Harris v. State*, 325 Ga. App. 568, 569-70 (754 SE2d 148) (2014) (issues appellant seeks to raise on appeal may be resolved from facts appearing in the existing record); *Hayes v. State*, 337 Ga. App. 280 (786 SE2d 539) (2016) (in which this court reviewed claim of improper participation by trial court in plea proceedings in context of granted motion for out-of-time direct appeal).

2. We now turn to the merits of Winfrey's claim that the trial court's allegedly improper participation in the plea negotiation process rendered his plea involuntary. The record reflects that on November 20, 2015, a hearing was convened to consider Winfrey's pending pretrial motions. At the outset, the trial court initiated the process of placing the status of the parties' plea negotiations on the record. The prosecuting attorney advised that the State had made two offers, both of which Winfrey had rejected and that he did not anticipate that the State would make any additional offers.

---

[5] The State also posits that Winfrey's notice of appeal is insufficient because it does not "point to any purported malady" in the appealed judgment and does not reference a motion to withdraw his plea. However, it is not necessary that an appellant set out his claims of error in his notice of appeal, and there is no authority for us to dismiss an appeal on this basis. See OCGA § 5-6-37 (setting out required contents of notice of appeal). Further, since a motion to withdraw was not filed, the notice of appeal certainly was not deficient for failing to mention it.

Defense counsel then explained to the trial court that much of Winfrey's hesitation to enter a plea centered around his parole eligibility because the Gang Act and RICO convictions would have made Winfrey less eligible for parole under the Parole Guidelines. The trial judge then stated on the record:

> Well, of course, Mr. Winfrey, this opportunity is going away . . .
>
> I'm talking . . . and you need to listen. This opportunity is going away. Go to trial and you get convicted there's not going to be any of me being concerned about when you parole out. I will not be concerned about when you parole out.
>
> I will not be able to impact what count – only a jury can impact what count you get convicted on or don't get convicted on. So that's for your team to figure out.
>
> Whatever they say you're guilty of I'm going to sentence you, and I'm not going to worry about when you get out of jail because it's not my concern.
>
> My concern is you went to trial, you didn't take any responsibility for what you did or did not do. It was proved if you get convicted of what you did do. I'll take that as truth, because a jury said so.
>
> And I would also take into account that you didn't take responsibility for what a jury says you did, and I won't worry about your parole eligibility.

And if you want to look around and see what happens to people in gangs in Cobb County, Georgia you can look at what happened last week to the guy who went to trial and got convicted and pulled . . . [one hundred to serve fifty]. There you go. These guys tried him. So I'm not judging them. That's what she did.

I'm a whole different person. And you're sitting over in the jail listening to everybody shoot their mouths off about this judge and that judge and the other judge.

We all have our reputations. My reputation is not that I'm an easy judge. I know it, you know it, the whole community knows it. So if that's what you want to go up against be my guest.

You've got an offer, it's about ready to evaporate. You're not coming back to there unless you convince a jury of people from Cobb County, Georgia you didn't do most of this.

There's such a thing as winning a battle and losing a war. If you think you're so smart and you've got it all figured out, you go to trial, and let's say you get acquitted on – how many counts are there, 27?

So let's say you get acquitted on ten and convicted on seventeen. You add it all up it's still a mess of time, and I don't care when you get paroled.

It's not my job, it's not my function. My job is public safety, and my job is constitutionally a correct trial for everybody, which I will do.

Once that's done, whatever they say you deal with, I'm going to worry about public safety.

So, y'all might want to talk a little bit more, but otherwise we're going to do motions in about ten minutes.

When the proceedings reconvened approximately one hour and fifteen minutes later, the prosecuting attorney informed the court that the parties had reached a plea agreement, pursuant to which Winfrey would plead guilty to only six of the twenty-seven counts, and the State would nolle pros the remaining counts. Following the State's presentation of the factual basis for the plea, the trial court thoroughly questioned Winfrey concerning the voluntariness of his plea and further provided an extensive explanation of his rights and the consequences of entering his plea. In accordance with the plea agreement, the trial court then sentenced Winfrey to twenty years, ten to serve, with credit for time served. This appeal followed.

Judicial participation in the plea negotiation process is prohibited by Georgia Uniform Superior Court Rule 33.5 (A)[6] and as constitutional matter when the

---

[6] That rule states "The trial judge should not participate in plea discussions."

interjection of the plea court is to such a degree as to render a guilty plea involuntary. *McDaniel v. State*, 271 Ga. 552, 553-54 (2) (522 SE2d 648) (1999); *Hayes v. State*, 337 Ga. App. at 280; *McCranie v. State*, 335 Ga. App. 548, 551 (2) (b) (782 SE2d 453) (2016); *Skomer v. State*, 183 Ga. App. 308, 309-10 (358 SE2d 886) (1987). In particular, "[c]omments by the trial judge that reinforce the unmistakable reality that a defendant who rejects a plea offer and instead opts to go to trial will likely face a greater sentence have been held by this Court to unlawfully insert the judge into the plea process." *Gibson v. State*, 281 Ga. App. 607, 609 (1) (636 SE2d 767) (2006). Accordingly, "[t]his Court has recognized 'an enormous difference between simply being aware or even being reminded by the state that rejection of a plea proposal *may* result in a greater punishment and being told by the trial judge that a rejection of a plea proposal *will* result in greater punishment in the event of a conviction by a jury.' (Emphasis in original.) *Skomer*, 183 Ga. App. at 310)." Id. When this occurs, "[d]ue to the force and majesty of the judiciary, a trial court's participation in the plea negotiation may skew the defendant's decision-making and render the plea involuntary because a defendant may disregard proper considerations and waive rights based solely on the trial court's stated inclination as to sentence." *McCranie*, 335 Ga. App. at 551-52 (2) (b).

9

Although this is a close case, an examination of the trial judge's remarks in context shows that she did not improperly interject herself in the negotiation process, nor did her comments render Winfrey's plea involuntary. The trial judge never explicitly told Winfrey that he would be facing a longer sentence if he rejected the State's offer and went to trial. Instead, the trial judge correctly pointed out that by rejecting the State's offer, Winfrey was giving up his opportunity to negotiate the charges on which he might be adjudicated guilty and sentenced and instead his sentence would be based on the jury's verdict. Likewise, the trial judge correctly pointed out that his parole eligibility would not be a factor in her sentencing. These comments, taken in isolation and in sum, did not rise to the level of improper interference by the trial judge in the plea negotiations such that Winfrey's plea was no longer voluntary. *Works v. State*, 301 Ga. App. 108, 111-12 (3) (686 SE2d 863) (2009) (no improper interference with plea negotiations where judge made no statement concerning sentence that would be imposed and did not threaten defendant with a stricter sentence if he went to trial instead of pleading guilty).

We take this opportunity, however, to caution that trial judges should be cognizant of and seek to avoid undue and impermissible involvement in the plea negotiation process so as to avoid involuntary pleas. Although, as we have noted, the

10

trial judge did not explicitly tell Winfrey that he would face a harsher sentence if he went to trial, she strongly suggested that result by referring to a recent sentence she had imposed for gang related charges and confirming her reputation as a judge who sentences harshly.[7] Under our current precedent, such intimations have been upheld even though they appear to violate the spirit of Rule 33.5 (A) because those general comments did not address how the trial judge would sentence in Winfrey's particular case.[8] That being said, we do not condone those comments and emphasize that the

---

[7] We also cannot discern the tone used by the trial judge but telling Winfrey to "be my guest" if he wanted to "go up against" a judge with her reputation supports his arguments.

[8] Compare *Pride v. Kemp*, 289 Ga. 353 (711 SE2d 653) (2011) (trial court's participation in plea negotiations was so great as to render the plea involuntary where she repeatedly advised the defendant that she would impose a longer sentence if he went to trial and would prefer that defendant go to trial so she could sentence him as she would really like to); *Hayes*, 337 Ga. App. at 281 (trial court impermissibly participated in plea negotiations when it effectively advised the defendant that he would not probate or suspend any portion of his sentence by telling him he would serve every day of his sentence in jail); *McCranie*, 335 Ga. App. at 552 (2) (b) (trial court not only rejected proposed plea as too lenient, but repeatedly indicated he wanted to sentence defendant to a longer sentence, and wanted him to withdraw his plea so he could preside over his trial); *Gibson*, 281 Ga. App. at 609 (1) (trial court improperly participated in plea negotiations by indicating that he would not give the defendant the same sentence considerations if he opted for a trial instead of accepting the plea proposal); *Cherry v. State*, 240 Ga. App. 41, 43-44 (2) (522 SE2d 540) (1999) (physical precedent only) (finding appellant was unduly influenced to plead guilty by the totality of the judge's comments, which included comments at a pretrial hearing that the initial plea recommendation was too lenient coupled with later

11

better practice when allowing the State to put such plea offers on the record would be to undertake that the defendant has been notified of the terms offered, understands the scope of the offer, and is aware of the charges against him and the potential sentence. Compare USCR 33 et seq. (setting out certain mandates a trial court must follow after a defendant decides to plead guilty to ensure the voluntariness of his plea); *Smith,* 287 Ga. at 394 (2) (same).

*Judgment affirmed. Miller, P. J., and McFadden, P. J., concur*.

---

comments that a decision by appellant to proceed to trial would be unwise); *Skomer v. State*, 183 Ga. App. 310 (358 SE2d 886) (1987) (reversing denial of motion to withdraw pleas where substantial likelihood existed that appellants were unduly influenced by judge's comments that he would consider giving them probation if they pled guilty but not if they were found guilty by a jury).